## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

WORLD WRESTLING
ENTERTAINMENT, INC.,

         Plaintiff,

   vs.

JOHN AND JANE DOES 1-100,
and XYZ CORPORATIONS 1-100,

         Defendants.

Civil Action No.:

**VERIFIED COMPLAINT FOR
INJUNCTIVE RELIEF AND DEMAND
FOR JURY TRIAL**

Plaintiff World Wrestling Entertainment, Inc. ("WWE"), by and through its undersigned attorneys, alleges the following in support of its Complaint against Defendants John and Jane Does and XYZ Corporations.

## NATURE OF THE CASE

1.    This is an action for trademark infringement, counterfeiting and dilution under the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and related state law claims for trademark infringement, dilution and unfair competition occasioned by Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of WWE's registered and unregistered trademarks and service marks.  WWE brings this action to (i) protect its reputation for selling merchandise of the highest quality and grade; (ii) prevent deception of the consuming public by Defendants; (iii) retain control over the substantial goodwill associated with the numerous registered and unregistered trademarks and service marks being unlawfully exploited by Defendants; and (iv) avoid thousands of irretrievably lost sales.

2.      To achieve these goals, WWE, through an Ex Parte Motion for Temporary

Restraining Order; Order for Seizure of Counterfeit Marked Goods; and Order to Show Cause

Why a Preliminary Injunction Should Not Issue, seeks an order from this Court authorizing the

seizure of such counterfeit merchandise.

3.      Specifically, WWE seeks injunctive relief to prevent Defendants from unlawfully

infringing WWE's intellectual property rights through Defendants' manufacture, distribution

and/or sale of counterfeit merchandise bearing WWE's registered or unregistered marks and the

names or likenesses of its wrestlers at its live events in New Orleans, Louisiana April 5-10, 2018

during WWE's Wrestlemania® 34 weekend and thereafter, at WWE live entertainment events

during its 2018-2019 tour ("WWE's 2018-2019 Live Events").   WWE's Wrestlemania® 34

weekend will consist of various events taking place in the New Orleans, Louisiana area from

April 5 through April 10, 2018, including, but not limited to, (1) WWE's Wrestlemania® Axxess

event at the New Orleans Convention Center from April 5-8; (2) WWE's Hall of Fame event at

the Smoothie King Center on April 6; (3) WWE's NXT TakeOver event at the Smoothie King

Center on April 7; (4) WWE's Wrestlemania® 34 event at the Mercedes-Benz Superdome on

April 8;  (5) WWE's Monday Night Raw event at the Smoothie King Center on April 9; and (6)

WWE's Smackdown® Live event at the Smoothie King Center on April 10 (collectively, the

"Wrestlemania® 34 Weekend Events").

## PARTIES

4.      Plaintiff WWE is a Delaware corporation having its principal place of business at

1241 East Main Street, Stamford, Connecticut 06902.

5.      Defendants John and Jane Does and XYZ Corporations, whose precise identities

are not yet known to WWE, are individuals and entities who, upon information and belief, have

301639579 v2

been doing business, continue to do business, or will be doing business in the Eastern District of Louisiana, or are now conspiring and otherwise traveling to WWE's 2018-2019 Live Events at the other states listed in Exhibit 3 attached hereto.  The Complaint will be amended to include the names of individuals and companies if and when they permit themselves to be identified.

6.     Upon information and belief, all Defendants are acting in concert and active participation with each other in connection with the wrongful acts alleged below.

## JURISDICTION AND VENUE

7.     This Court has personal jurisdiction over the Defendants because they reside in and/or have transacted or will be transacting business in this State, and have caused harm or tortious injury in this State by acts within this State.  Upon information and belief, all Defendants are individuals and entities who will be present in the Eastern District of Louisiana in connection with the claims asserted below and/or who, at all times relevant hereto, have done business, continue to do business, or will be transacting business in the Eastern District of Louisiana.

8.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b).  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), with respect to the state law claims asserted herein.

9.     This Court is an appropriate venue for this action under 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to WWE's request for relief will occur in this district.

## FACTUAL BACKGROUND

A.     WWE's Business And Marks

10.     Since at least as early as February 1983, WWE, first doing business as the "World Wrestling Federation" and now doing business as "World Wrestling Entertainment," has

301639579 v2

provided to the public live and televised wrestling and entertainment events and services (the "WWE Wrestling Services").  In connection therewith, WWE has used, advertised, publicized and presented the WWE Wrestling Services, and related souvenirs, merchandise and other products ("WWE Merchandise") under its WORLD WRESTLING ENTERTAINMENT® mark and certain other service marks and trademarks (collectively, the "WWE Marks").  A listing of those WWE Marks, both currently pending or registered with the United States Patent and Trademark Office and unregistered but exclusively owned or controlled by WWE, is set forth in Exhibits 1 and 2 hereto, respectively.  Among the marks most important to this action are:

| Mark | U.S. Trademark Registration Nos. |
|------|----------------------------------|
| WORLD WRESTLING ENTERTAINMENT | 2,818,358; 2,772,677; 2,757,599; 2,754,499; 2,870,426; 2,902,203; 2,917,910; 3,585,170; 3,585,171 |
| WWE | 2,772,683; 3,056,074; 3,541,936; 4,451,697; 3,538,710; 3,489,357; 3,412,176; 3,412,177; 3,541,956; 3,621,017 |
| WWE Logos | 4,735,547; 4,731,795; 4,735,546; 4,625,255; 4,727,923; 4,675,657; 4,538,209; 4,689,839; 4,689,835; 4,538,210; 4,614,144; 4,645,471; 4,552,144; 2,757,596; 2,754,495; 2,846,450; 2,799,228; 2,751,436; 2,757,597; 2,765,751; 2,751,437; 4,756,090; 3,412,169; 3,412,170; 3,691,588; 4,220,594; 5,291,266 |
| WRESTLEMANIA | 1,432,884; 1,863,534; 2,625,125; 2,881,508; 3,351,858; 3,351,859; 3,727,338; 3,727,339; 4,285,112; 4,780,778; 4,923,842; 5,094,698 |

The WWE Marks are well known to the public and have come to identify WWE to the public as the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise. WWE exclusively owns or controls all right, title and interest in the names, likenesses and rights of publicity for its current wrestlers.

301639579 v2

11.     WWE's 2018-2019 Live Events are a multi-city presentation of live wrestling entertainment events throughout the United States and in many other cities throughout the world. The itinerary of WWE's 2018-2019 Live Events is attached hereto as Exhibit 3.  Most major U.S. cities will have a WWE live event appear in their city at least once or twice a year.  WWE's 2018-2019 Live Events include all of the following types of programs:  (1) live, pay-per-view events; (2) live, nationally-televised shows; and (3) live, non-televised events known as "house shows."  In addition to generating revenues through ticket sales and promoting its pay-per-view events, WWE sells a significant portion of WWE Merchandise at its 2018-2019 Live Events.

12.     WWE presents twelve (12) to sixteen (16) WORLD WRESTLING ENTERTAINMENT® pay-per-view events per year.  WWE's annual marquee pay-per-view event is called "Wrestlemania®" which sells for approximately $60 per view through WWE's cable and satellite providers and is offered to subscribers of the WWE Network.  Wrestlemania® is considered one of the "Big Four" original annual WWE pay-per-view events, along with SummerSlam®, Royal Rumble® and Survivor Series®.

13.     WWE's pay-per-view events are the biggest wrestling events of the year for WWE and offer an occasion for, inter alia, determining and crowning WWE's various champions and/or elucidating the various story lines developed by WWE throughout the year. These live pay-per-view events are extensively promoted and widely attended and viewed.

14.     For example, WrestleMania® 30 at the Mercedes-Benz Superdome in New Orleans, Louisiana drew a sold-out crowd of 75,167 spectators from all 50 states as well as 36 foreign countries, and was watched by more than one million households in the United States through pay-per-view or the WWE Network.  WrestleMania® 31 at Levi's Stadium in Santa Clara, California drew over 76,000 spectators from all 50 states and 40 countries, and over 1.3

million subscribers through pay-per-view or the WWE Network.  WrestleMania® 32 occurred at AT&T Stadium in Arlington, Texas drew a crowd of 101,763 from all 50 states and 35 countries, and was viewed by 1.82 million subscribers through the WWE Network.  Moreover, WrestleMania® 32 was mentioned 2.5 million times on Twitter during the day of the broadcast. WrestleMania® 33 at Camping World Stadium in Orlando, Florida drew an attendance of 75,245 and was the most-watched WrestleMania® history, reaching a record 1.95 million global households on the WWE Network alone.

15.    WWE's Wrestlemania® also has drawn record merchandise sales for the venues. For example, WrestleMania® 30 grossed $10.9 million, making it the highest grossing non-sporting event in the history of the Mercedes-Benz Superdome.  WrestleMania® 32 grossed $17.3 million, making it the highest grossing live event in WWE history.  WrestleMania® 32 also generated a record-breaking $4.55 million in WrestleMania® merchandise revenue, an increase of 37 percent, or $1.2 million, from WrestleMania® 31. WrestleMania® 33 generated $14.5 million in revenue, breaking every Camping World Stadium record.

16.    In addition to its pay-per-view events, WWE currently presents two weekly WWE programs called "RAW®" and "Smackdown®" that feature wrestling entertainment programming every Monday and Tuesday night nationwide on the USA Network cable television channel. WWE also provides WWE Network subscribers with access to a video library that includes, among other things, live streamed original programming, including "WWE NXT®," and pay-per-view events, as well as "on demand" prior pay-per-view and televised events.  WWE also syndicates its video content on Hulu and YouTube including full length episodes and clips of "RAW®," "Smackdown®" and a variety of classic content and original short-form webisodes.

301639579 v2

17.     At its Live Events, in retail stores nationwide and via on-line, WWE sells a large variety of WWE Merchandise featuring the WWE Marks.  The WWE Merchandise typically displays prominently the name and logo of the company, the WWE Marks, its events, its programs, and/or the wrestlers and other personalities involved with the events and programs. Examples of WWE Merchandise  include without limitation, T-shirts, jerseys, sweatshirts, caps, hats, belts, wrestling masks, sunglasses, key rings, action figures, posters, and DVDs.

**B.     Counterfeiting At Previous Live Events**

18.     For many years, WWE has sold the WWE Merchandise at and in connection with its live events.  WWE's venue merchandise business consists of the design, sourcing, marketing and distribution of numerous WWE-branded products, such as t-shirts, caps and other novelty items, all of which feature WWE's Superstars, Divas and/or logos, including WORLD WRESTLING ENTERTAINMENT®, WWE®, the WWE® logo, and/or one or a number of other WWE Marks included in Exhibits 1 and 2 hereto.  In 2017, venue merchandise net revenues were approximately $24 million, including $3.7 million in revenue from WrestleMania® 33.

19.     WWE Merchandise is of the highest quality and grade.  These genuine goods are currently being sold only at authorized locations throughout the United States including, but not limited to, the house show arenas and live event venues, and retail stores in the Eastern District of Louisiana, as well as authorized online retail stores such as WWE's e-commerce website at www.wweshop.com.

20.     Based upon information and belief, WWE's past experiences and its investigation into the matter, WWE asserts that Defendants, alone and in conjunction with other, similarly situated individuals and entities, specifically numerous peddlers and manufacturing and distribution companies, will be attempting to sell or distribute goods of inferior quality to those

sold, or licensed for sale, by WWE at or near WWE's 2018-2019 Live Events.  These goods, which are marked with imitations or counterfeits of the WWE Marks, include, inter alia, T-shirts, sweatshirts, caps, wrestling masks, DVDs, posters, and other souvenirs, merchandise and memorabilia ("Counterfeit Merchandise"). In addition, the merchandise sold by Defendants not only is counterfeit but the merchandise also threatens public safety.  Based on past experience, there are concerns about the quality of the counterfeit goods, such as the flammability level of the ink used to print the t-shirts, and the safety of the design of other goods, including wrestling face masks.

21.    For example, at WWE's WrestleMania® 27 weekend events, held March 30 – April 4, 2011, in Atlanta, Georgia, WWE encountered an untold number of individuals, who came from all over the United States, distributing and selling Counterfeit Merchandise.  With the aid of an ex parte TRO and seizure order granted by the United States District Court for the Northern District of Georgia, WWE was able to gain some measure of control over such counterfeiting by seizing more than 3,000 counterfeit t-shirts during the WrestleMania® 27 weekend events.  The t-shirts were being sold for at least $10 per shirt.

22.    At the WrestleMania® 28 Weekend Events in Miami, Florida in 2012, WWE again encountered numerous counterfeiters from various states selling bootleg merchandise.  In the course of enforcing an ex parte TRO and seizure order issued by the United States District Court for the Southern District of Florida, WWE seized hundreds of counterfeit shirts.  Most of those shirts were child-sized and emitted a strong unknown chemical odor, which further increases and heightens the public safety concern.

23.    Evidencing and confirming the coordinated nature of Defendants' illegal activities, two of the counterfeiters who were served in Miami, Florida in 2012 had previously

been served at WrestleMania® 24 in Orlando, Florida in 2008 pursuant to an ex parte TRO and seizure order.  In addition, as described in more detail below, two of the defendants who were served in **Miami, Florida in 2012** were served again in **2014 in this District**.  These facts establish Defendants complete disregard for the law and their intent to follow WWE Live Events around the United States.

24.      In 2013, at the WrestleMania® 29 Weekend Events in East Rutherford, New Jersey, WWE again encountered numerous counterfeiters from various states selling bootleg merchandise.  In the course of enforcing an ex parte TRO and seizure order issued by the United States District Court for the District of New Jersey, WWE seized thousands of counterfeit T-shirts, DVDs, action figures and posterboards.  WWE also obtained a consented to permanent injunction against one of the counterfeiters that WWE served in connection with the court's TRO and seizure order.

25.      In 2014, WWE's WrestleMania® 30 events were held in this District.  Initially, this Court denied WWE's request for an ex parte TRO and seizure order on the ground that WWE had not pleaded sufficient specific facts about the unknown counterfeiters' identities.  WWE appealed that order and the Court of Appeals for the Fifth Circuit vacated the decision and held that WWE, based upon similar allegations to those alleged here, had established its entitlement to a TRO and Seizure Order.

26.      Without the benefit of a TRO and seizure order, WWE's ability to combat counterfeit sales was significantly hampered.  However, WWE was able to identify the putative names of four individuals who were caught selling counterfeit merchandise.  WWE was not able to obtain contact information for all four individuals, and the contact information it did obtain turned out to be false.

27.    WWE filed two amended Motions for TRO and Seizure Order against the four identified individuals, which the Court granted.  As alleged above, two of the identified individuals had been previously served in Miami in 2012 pursuant to an <u>ex parte</u> TRO and seizure order granted by the Southern District of Florida in connection with WrestleMania® 28. The individuals did not participate in the Southern District of Florida proceeding and likewise failed to return process or enter an appearance in this District's proceeding.

28.    In 2015, WWE obtained and enforced an <u>ex parte</u> TRO and seizure order issued by the United States District Court for the Northern District of California at the WrestleMania® 31 Weekend Events in San Jose and Santa Clara, California.  In connection with the Northern District of California's order, WWE served several counterfeiters and seized their counterfeit merchandise.  After the WrestleMania® 31 Weekend Events, WWE entered into a settlement agreement that permanently enjoined three of the named counterfeiters.

29.    In 2016, the United States District Court for the Northern District of Texas issued WWE an <u>ex parte</u> TRO and seizure order for WWE's WrestleMania® 32 Weekend Events in Dallas and Arlington, Texas.  With the assistance of local law enforcement, WWE was able to obtain the names of several counterfeiters and obtained a permanent injunction against two of the counterfeiters that WWE served in connection with the court's TRO and seizure order.

30.    Last year, the United States District Court for the Middle District of Florida issued WWE an <u>ex parte</u> TRO and seizure order for WWE's WrestleMania® 33 Weekend Events in Orlando, Florida.  Pursuant to the court's order, WWE seized hundreds of counterfeit items and served four individuals, including one individual who had traveled nearly 500 from Canton, Georgia.

31.     Since WWE's WrestleMania® 33 Weekend Events, WWE has continued to encounter counterfeiters at its Live Events.   For instance, on January 22, 2018, WWE encountered numerous counterfeiters at its WWE RAW® event held in Brooklyn, New York at the Barclays Center.   These counterfeiters were selling "WWE® Live" shirts that displayed counterfeit WWE Marks and Superstars on the front and a list of WWE® Live events from January through April on the back, including listing the WrestleMania® 34 Event in New Orleans.   Approximately one week later, WWE saw the identical counterfeit shirt being sold at WWE's Royal Rumble® pay-per-view event held in Philadelphia, Pennsylvania at the Wells Fargo Center.   Based on WWE's prior experience, WWE believes and asserts that Defendants have and will continue to sell this Counterfeit Merchandise and others like it across the United States.

32.     At no time has WWE authorized Defendants to manufacture, distribute, offer for sale or sell any Counterfeit Merchandise, nor any WWE Merchandise or goods or materials bearing the WWE Marks not specifically licensed and approved by WWE.

33.     Based upon its investigation into the matter, and as described more fully in the Declaration of Lauren Dienes-Middlen, Esq., WWE has observed that the design, materials and quality of most of the Counterfeit Merchandise being distributed and sold at WWE live events throughout the United States is poor and uniform from event to event and city to city.   As set forth above, WWE has encountered Counterfeit Merchandise that lists multiple WWE live events making it easy for such merchandise to be sold from venue to venue.   Based in part on this uniformity, WWE believes and avers that Defendants distributing and selling Counterfeit Merchandise are part of a concerted operation that travels and works together from venue to venue to sell unauthorized Counterfeit Merchandise likely acquired from common sources of

manufacture.   Many of the individual Defendants sell the same Counterfeit Merchandise in different cities.  Groups of these individuals travel together from event to event, including in the Eastern District of Louisiana.

34.     Thus, without the aid of a federal court order authorizing seizure of Counterfeit Merchandise, WWE is unable to combat the network of individuals and entities distributing and selling unauthorized Counterfeit Merchandise at WWE's nationwide 2018-2019 Live Events and is effectively rendered unable to protect its rights, and the rights of the consuming public, against the unauthorized and unlawful distribution and sale of Counterfeit Merchandise at WWE's 2018-2019 Live Events.

35.     As demonstrated by the Dienes-Middlen Declaration, throughout the past several years of WWE live events, WWE has encountered numerous sellers of Counterfeit Merchandise at various locations throughout the United States.

36.     During the course of WWE's enforcement of TROs, Seizure Orders and nationwide preliminary injunctions entered by the District Court for the Southern District of Texas, the District Courts for the Middle and Southern Districts of Florida, the District Court for the Northern District of Georgia, the District of New Jersey and prior similar orders, including those entered by the District Court for the District Court of Massachusetts and the District Courts for the Eastern and Southern Districts of New York,  WWE has seized thousands of counterfeit T-shirts, caps, wrestling masks, posters, DVDs, pictures and other items of Counterfeit Merchandise marked with imitations of the WWE Marks.  As a result of WWE's ability to seize Counterfeit Merchandise, WWE was able to avoid some lost sales and, more importantly, lessen the irreparable injury to WWE's reputation and goodwill with the consuming public that is caused by Defendants' illegal conduct.  In addition, as a result of WWE's ability to seize

Counterfeit Merchandise, WWE was able to protect the safety of the public, including children, against potential harmful effects of such uncontrolled, inferior and potentially dangerous goods.

37.     Pursuant to past TROs, Seizure Orders and nationwide preliminary injunctions, WWE has posted a bond and proceeded at all times with the utmost caution in seizing only those goods that WWE's enforcement team determined to be Counterfeit Merchandise.   WWE enforced the TROs, Seizure Orders and nationwide preliminary injunctions in a manner designed to protect its trademarks and service marks without compromising the rights of the Defendants in those actions.

38.     Many of the individuals served under these prior TROs, Seizure Orders and nationwide preliminary injunctions refused to identify themselves, refused to accept service, or both.  In addition, with respect to those that do not accept service, many of them provide fake identification. Moreover, none of the Defendants in those actions came forward with objections to the court.  Such behavior is typical of counterfeiters who distribute and sell unauthorized merchandise at live entertainment events.

39.     The TROs, Seizure Orders and nationwide preliminary injunctions issued in the past enabled WWE to effectively police distribution and sale of Counterfeit Merchandise throughout WWE's nationwide series of live events.   The Defendants' conduct, however, represents a continuing problem, not yet abated, and the only effective relief available to WWE is the ex parte seizure process.

40.     Without the ability to seize Counterfeit Merchandise at and near WWE's 2018-2019 Live Event venues, including, but not limited to, at or near the Wrestlemania® 34 Weekend Events in the New Orleans, Louisiana area from April 5 through April 10, 2018, WWE stands (i) to lose merchandise sales; (ii) to suffer incalculable, irreparable damage to its reputation and

301639579 v2

goodwill; and (iii) to lose the ability to protect the safety of WWE's consuming public -- who specifically decide to buy tickets and attend WWE's live events -- against potential harmful effects of the inferior and potentially dangerous Counterfeit Merchandise sold right outside WWE's live events.

**C.   Expected Counterfeiting At Wrestlemania® 34 Weekend Events in New Orleans and Elsewhere**

41.     WWE's Wrestlemania® 34 Weekend Events are scheduled for April 5, 2018 through April 10, 2018.  The events include (1) WWE's Wrestlemania® Axxess event at the New Orleans Convention Center from April 5-8; (2) WWE's Hall of Fame event at the Smoothie King Center on April 6; (3) WWE's NXT TakeOver event at the Smoothie King Center on April 7; (4) WWE's Wrestlemania® 34 event at the Mercedes-Benz Superdome on April 8;  (5) WWE's Monday Night Raw event at the Smoothie King Center on April 9; and (6) WWE's Smackdown® Live event at the Smoothie King Center on April 10.  WWE's 2018-2019 Live Events will proceed throughout the United States according to the schedule attached hereto as Exhibit 3.

42.     In connection with its Wrestlemania® 34 Weekend Events and its nationwide 2018-2019 Live Events, WWE has advertised and promoted heavily, and will continue to advertise and promote heavily, the WWE Marks in interstate commerce.

43.     As the foregoing demonstrates, the only effective means of protecting WWE's trademarks and service marks from unlawful counterfeiting by Defendants at WWE's 2018-2019 Live Events is through the ex parte seizure process, which provides WWE with the ability to fight against unlawful counterfeiting.  To maintain any meaningful defense against the unlawful distribution and sale by Defendants of Counterfeit Merchandise at WWE's 2018-2019 Live Events, which is an ongoing problem inherent in the live entertainment industry, WWE must be allowed to proceed with the ex parte seizure process.

14

44.     Indeed, Defendants are habitual "repeat offenders" who refuse to identify themselves or accept service, much less appear in court in connection with the seizure of their unlawful goods.  Aware of the illegality of their activities, these individuals and groups, if caught, will quickly hide or dispose of their Counterfeit Merchandise, or load it into a waiting vehicle and lock the vehicle or drive it away.  Most sellers have only a small number of items at any given time and their supply is replenished after being seized by WWE.  In fact, Plaintiff encountered this exact modus operandi consistently over the years.  Thus, Defendants are organized and acting in concert with one another and are making a conscious effort to hide their identities.

45.     Defendants are without offices, identification, licenses or addresses.  In this manner, they can avoid having to respond to an ordinary civil lawsuit and thus are essentially immune from an injunction unless it is accompanied by authority to seize Counterfeit Merchandise.

46.     For example, through the enforcement of ex parte TROs, Seizure Orders and nationwide preliminary injunctions, WWE has attempted to serve hundreds of counterfeiters and has seized thousands of items of Counterfeit Merchandise.  Most of the apprehended counterfeiters, who not only appear at the venues where the event is occurring but also in the parking areas at the venues and on the roads that led to the venues, refused to identify themselves and refused to accept service, and none of them came forward to respond formally in court.  WWE would welcome their appearances in court, as it would permit WWE to identify the bootleggers, take discovery from them, discover their manufacturing and printing sources and pursue them for money damages.

47.     The Defendant bootleggers will continue, undaunted, to attempt to peddle Counterfeit Merchandise at WWE's 2018-2019 Live Events, and WWE's only means of keeping their conduct under control is through the <u>ex parte</u> seizure process.

48.     Based upon the foregoing, and based upon its experience enforcing earlier TROs, Seizure Orders and nationwide preliminary injunctions as explained in the Dienes-Middlen Declaration, WWE believes and therefore avers that Defendants will follow WWE's 2018-2019 Live Events from city to city, throughout the country, selling Counterfeit Merchandise. Defendants constitute bootlegging rings that operate in this District by obtaining Counterfeit Merchandise from a small number of manufacturers.

49.     On information and belief, Defendants will continue to attempt to sell Counterfeit Merchandise at WWE's 2018-2019 Live Events, including at the Wrestlemania® 34 Weekend Events.

50.     <u>Ex parte</u> seizure relief is thus essential if WWE is to maintain a defense against and effectively police the unlawful activities of Defendants at the nationwide series of WWE 2018-2019 Live Events, including at the Wrestlemania® 34 Weekend Events in New Orleans, Louisiana.   Without such relief, WWE will have no effective remedy against Defendants' continued distribution and sale of Counterfeit Merchandise that infringes WWE's registered and unregistered trademarks and service marks, threatens lost sales in untold dollars, deceives the consuming public into mistakenly believing they are purchasing authorized, licensed, high quality goods, and poses a potential safety risk because of the inability for WWE to control the quality of the materials used by the bootleggers.

301639579 v2

D.    **Irreparable Harm To WWE**

51.    Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise will deceive the consuming public into believing that they are purchasing genuine goods which have been manufactured, authorized, or approved by WWE, and will likely cause confusion and mistake in that consumers are likely to assume that WWE has manufactured, authorized, or approved the Counterfeit Merchandise sold by Defendants.

52.    In addition to causing WWE to suffer incalculable, irrecoverable and irreparable lost sales, Defendants' manufacture, distribution and sale of inferior quality Counterfeit Merchandise displaying the WWE Marks will irreparably injure WWE's reputation for the manufacture and sale of the highest quality souvenirs, merchandise, and memorabilia and poses a potential safety risk to the public because WWE is unable to control the quality of the materials used by the bootleggers.  Indeed, there is no way to know the quality of the counterfeit goods, such as the flammability level of the ink used to print the t-shirts and the safety of the design of other goods, such as wrestling masks, that previously have been seized.  For example, much of the counterfeit merchandise seized at prior Wrestlemania® Weekend Events consisted of child-sized t-shirts and emitted a strong unknown chemical odor, which further increases and heightens the public safety concern.

53.    Based on WWE's prior encounters with sellers of Counterfeit Merchandise at live events, other WWE events, and in the retail and wholesale distribution context, on information and belief, WWE alleges that, if Defendants are notified that WWE has filed this lawsuit and has filed a Motion for TRO, Defendants will cause the unauthorized Counterfeit Merchandise to be dispersed and, thereafter, sold at other locations on or near the premises of the event arenas or

elsewhere with the result that WWE will be unable to obtain an effective remedy for Defendants' wrongful conduct.

## COUNT I
### Trademark Infringement (Registered Marks)

54.   Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 53 of this Complaint.

55.   The WWE Marks on WWE Merchandise have become well and favorably known to consumers throughout the United States, including Louisiana, as an indication of goods emanating from or authorized by a single source, i.e., WWE.

56.   Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

57.   The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial.  This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

58.   Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined will continue to do so, all to WWE's monetary damage and irreparable harm.

## COUNT II
### Trademark Infringement (Unregistered
### Marks) And False Designation Of Origin

59.   Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 53 of this Complaint.

301639579 v2

60.     Defendants' use of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's unregistered trademarks in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.     Defendants' use of the WWE Marks on the Counterfeit Merchandise creates a false designation of origin and a false representation of Defendants' goods, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial.  This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

63.     Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined, will continue to do so, all to WWE's monetary damage and irreparable harm.

## COUNT III
## Federal Trademark Dilution

64.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 53 of this Complaint.

65.     As a result of the duration and extent of WWE's use and promotion of the WWE Marks, at least WWE®, WWE® logo, Raw®, Smackdown®, Wrestlemania®, SummerSlam®, Royal Rumble®, Survivor Series® and names and likenesses of several of its current wrestlers are famous and highly distinctive.

66.     Defendants are making commercial use of these WWE marks in interstate commerce.

67.     Defendants' use began long after these WWE marks became famous.

301639579 v2

68.     Defendants' use of these WWE marks dilutes the distinctive quality of the marks by diminishing the capacity of the marks to identify and distinguish WWE's goods and services, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

69.     Defendants willfully intended to trade on WWE's reputation and goodwill, and to cause dilution of WWE's famous marks.

70.     Defendants' conduct has caused and continues to cause WWE immediate and irreparable injury.  WWE lacks an adequate remedy at law.

## COUNT IV
## Trafficking In Counterfeit Goods

71.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 53 of this Complaint.

72.     Defendants' souvenirs, merchandise, and memorabilia constitute goods bearing counterfeit marks.  Defendants have trafficked these goods in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d) and unless restrained and enjoined, will continue to traffic these goods, all to WWE's monetary damage and irreparable harm.

## COUNT V
## Trademark Infringement and
## Unfair Competition, Under Lousiana Law

73.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 53 of this Complaint.

74.     The WWE Marks are marks valid at common law.

75.     Defendants' unauthorized use of the WWE Marks is likely to cause confusion, or mistake or to deceive as to the source of Defendants' goods and services, which constitutes trademark infringement and dilution under the common law of Louisiana.

301639579 v2

76.     Defendants' unauthorized use of the WWE Marks constitutes trademark infringement, trademark dilution and unfair competition under Louisiana common law and La. Rev. Stat. §§ 51:222, 51:223.1 and 51:1401 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff World Wrestling Entertainment, Inc. respectfully prays:

1.      That this Court grant a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and each of his, her, or their partners, associates, agents, servants, and employees, and all other bootleggers acting in concert therewith or having knowledge thereof, from manufacturing, distributing, offering for sale or selling Counterfeit Merchandise.

2.      That this Court order that all Counterfeit Merchandise and any records documenting the manufacture, sale, or distribution of Counterfeit Merchandise, found in the possession, custody, or control of Defendants be seized until a hearing can be held before this Court to determine the disposition of any goods so seized.

3.      That Defendants be required to account to and reimburse WWE for any and all profits which Defendants have derived from the sale of any Counterfeit Merchandise and for any and all damages which WWE has sustained by reason of the acts complained of herein, or statutory damages.

4.      That Defendants be required to pay treble the amount of any profits derived from the sale of any Counterfeit Merchandise.

5.      That this Court award WWE its cost and reasonable attorneys' fees in this action.

6.      That this Court grant such other and further relief as it deems just and appropriate under the circumstances.

301639579 v2

## DEMAND FOR JURY TRIAL

Plaintiff World Wrestling Entertainment, Inc. hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

WORLD WRESTLING ENTERTAINMENT, INC.

By their attorneys,

/s/ J. Matthew Miller III

Raymond G. Areaux T.A. (#16972)
J. Matthew Miller III (#32594)
Ian C. Barras (#30854)
Carver, Darden, Koretzky, Tessier,
Finn, Blossman & Areaux, LLC
Energy Centre, Suite 3100
1100 Poydras Street
New Orleans, LA 70163
Telephone: 504.585.3803
E-mail: areaux@carverdarden.com

Jerry S. McDevitt (*pro hac vice* motion to be filed)
E-mail: jerry.mcdevitt@klgates.com
Curtis B. Krasik (*pro hac vice* motion to be filed)
E-mail: curtis.krasik@klgates.com
Christopher M. Verdini (*pro hac vice* motion to be filed)
E-mail: christopher.verdini@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Ave.
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501

*Attorneys for Plaintiff, World Wrestling Entertainment, Inc.*

Dated: March 26, 2018

301639579 v2

## VERIFICATION

I am Senior Vice President, Assistant General Counsel - Intellectual Property, Business and Legal Affairs of Plaintiff World Wrestling Entertainment, Inc.  The allegations in the foregoing Complaint that relate or refer to World Wrestling Entertainment, Inc. are true to my own knowledge and as to those allegations that relate or refer to Defendants' activities and that are alleged upon information and belief, I believe them to be true.  I verify under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of March, 2018 in Stamford, Connecticut.

Lauren A. Dienes-Middlen
Senior Vice President, Assistant General Counsel -
Intellectual Property, Business and Legal Affairs
World Wrestling Entertainment, Inc.

301639579 v2