# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., <br><br>         Plaintiff, <br><br>    vs. <br><br> VARIOUS JOHN AND JANE DOES, and VARIOUS XYZ CORPORATIONS, <br><br>         Defendants. | Civil Action No.: |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S <u>EX PARTE</u> MOTION FOR TEMPORARY RESTRAINING ORDER; ORDER FOR SEIZURE OF COUNTERFEIT MARKED GOODS; AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

## INTRODUCTION

Plaintiff World Wrestling Entertainment, Inc. ("WWE") respectfully submits this memorandum of law in support of its Ex Parte Motion for Temporary Restraining Order, Order for Seizure of Counterfeit Marked Goods and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Motion"), filed concurrently herewith.  WWE also has filed concurrently herewith a Verified Complaint seeking relief pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d) as a result of Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of WWE's famous trademarks and service marks. WWE seeks this relief because it is the only way to stop transient counterfeiters and bootleggers from plaguing WWE's Wrestlemania® 34 weekend events occurring in New Orleans, Louisiana from April 5 through April 10, 2018, as well as the remainder of its 2018-2019 Live Events.

The leading treatise on trademark and unfair competition law has recognized:

> In cases of outright counterfeiting by marginal imitators, traditional civil remedies have proven largely ineffective.  The retailer of counterfeit goods is often a vendor peddling memorabilia merchandise at a rock concert, a transient street vendor or a merchant at a flea market.  The counterfeiter or its distributor who is served with a civil summons to appear at a hearing on a preliminary injunction will either disappear or quickly dispense of existing inventory of counterfeit items [leaving the trademark owner without an effective remedy].

5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 30:34 (4th ed. 2008).  For this reason, Congress passed the Trademark Counterfeiting Act of 1984, incorporated as Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d), which expressly authorizes the seizure of counterfeit goods without prior notice.  Defendants John and Jane Does and XYZ Corporations are street merchants who are profiting wrongfully from the sale of

merchandise bearing counterfeits of trademarks and service marks owned exclusively by WWE. WWE brings this action to stop the sale of such counterfeit merchandise, which, in addition to damaging WWE's valuable goodwill, also presents a safety hazard to the public.

The relief that WWE seeks herein has been repeatedly endorsed by courts throughout the United States, including the U.S. Court of Appeals for the Fifth Circuit in a published opinion. World Wrestling Ent., Inc. v. Unidentified Parties, 770 F.3d 1143 (5th Cir. 2014).  In November 2014, the Fifth Circuit vacated a prior order from this District which denied WWE's request for an ex parte TRO and Seizure Order, based upon the district court's "misinterpret[ation] [of] the statutory requirement" of Section 1116(d) of the Lanham Act.  Id. at 1145.  Considering substantially the same factual circumstances averred in the Verified Complaint filed concurrently herewith and the same legal authorities described herein, the Fifth Circuit held that "WWE . . . met its burden under section 1116(d), and . . . the orders [TRO and Seizure] sought here should issue."  See id. WWE now asks this Court to enforce the remedies provided by Congress in 15 U.S.C. § 1116(d) for the same reasons the Fifth Circuit  previously found WWE was entitled to relief and enter the requested Ex Parte TRO, Order for Seizure of Goods Bearing Counterfeit Marks, and Order to Show Cause Why A Preliminary Injunction Should Not Issue.

**FACTUAL BACKGROUND**

Since at least as early as February 1983, WWE, first doing business as the "World Wrestling Federation" and now doing business as "World Wrestling Entertainment," has provided to the public live and televised wrestling and entertainment events and services (the "WWE Wrestling Services").  See Verified Complaint at ¶ 10.  In connection therewith, WWE has used, advertised, publicized and presented the WWE Wrestling Services, and related souvenirs, merchandise and other products ("WWE Merchandise") under its WORLD

2

WRESTLING ENTERTAINMENT® mark and certain other service marks and trademarks identified in Exhibits 1 and 2 to the Verified Complaint (collectively, the "WWE Marks"). Id. Among the marks most important to this action are: (1) WORLD WRESTLING ENTERTAINMENT; (2) WWE; (3) W; and (4) WRESTLEMANIA.

| Mark | U.S. Trademark Registration Nos. |
|------|----------------------------------|
| WORLD WRESTLING ENTERTAINMENT | 2,818,358; 2,772,677; 2,757,599; 2,754,499; 2,870,426; 2,902,203; 2,917,910; 3,585,170; 3,585,171 |
| WWE | 2,772,683; 3,056,074; 3,541,936; 4,451,697; 3,538,710; 3,489,357; 3,412,176; 3,412,177; 3,541,956; 3,621,017 |
| WWE Logos | 4,735,547; 4,731,795; 4,735,546; 4,625,255; 4,727,923; 4,675,657; 4,538,209; 4,689,839; 4,689,835; 4,538,210; 4,614,144; 4,645,471; 4,552,144; 2,757,596; 2,754,495; 2,846,450; 2,799,228; 2,751,436; 2,757,597; 2,765,751; 2,751,437; 4,756,090; 3,412,169; 3,412,170; 3,691,588; 4,220,594; 5,291,266 |
| WRESTLEMANIA | 1,432,884; 1,863,534; 2,625,125; 2,881,508; 3,351,858; 3,351,859; 3,727,338; 3,727,339; 4,285,112; 4,780,778; 4,923,842; 5,094,698 |

The WWE Marks are well known to the public and have come to identify WWE to the public as the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise. Id. at ¶ 10.

WWE live events include all of the following types of programs: (1) live, pay-per-view events; (2) live, nationally televised shows; and (3) live, non-televised events known as "house shows." Id. at ¶ 11. WWE typically presents twelve (12) to sixteen (16) pay-per-view events per year. Id. at ¶ 12. WWE's annual marquee pay-per-view event is called "Wrestlemania®," which is being held this year in New Orleans, Louisiana. Id. at ¶¶ 3, 11-13. Beginning on April 5,

2018, WWE will embark on a multi-city presentation of live wrestling entertainment events throughout the United States ("WWE's 2018-2019 Live Events"), including its Wrestlemania® 34 weekend from April 5 through April 10, 2018 in New Orleans, Louisiana.  See id.  WWE's Wrestlemania® 34 weekend will consist of various events taking place in the New Orleans area, including (1) WWE's Wrestlemania® Axxess event at the New Orleans Convention Center from April 5-8; (2) WWE's Hall of Fame event at the Smoothie King Center on April 6; (3) WWE's NXT TakeOver event at the Smoothie King Center on April 7; (4) WWE's Wrestlemania® 34 event at the Mercedes-Benz Superdome on April 8;  (5) WWE's Monday Night Raw event at the Smoothie King Center on April 9; and (6) WWE's Smackdown® Live event at the Smoothie King Center on April 10 (collectively, the "Wrestlemania® 34 Weekend Events").  Id. at ¶ 3. WWE's live events are extremely popular with the public and, based on past experience, WWE's 2018-2019 Live Events will draw thousands of fans per event from all over the United States. See id. at ¶¶ 11-14.

At and in connection with its live events, as well as in retail stores nationwide and via mail order and on-line catalogs, WWE sells a large variety of the WWE Merchandise featuring the WWE Marks.  Id. at ¶ 17.  WWE Merchandise displays prominently the name and logo of the company, its events, its programs, and/or the wrestlers and other personalities involved with the events and programs.  Id.  Examples of WWE Merchandise include, without limitation, T-shirts, jerseys, sweatshirts, caps, hats, belts, sunglasses, key rings, action figures, posters, and DVDs.  Id.  As in the past, WWE will sell a large variety of merchandise at and in connection with the Wrestlemania® 34 Weekend Events, and the other WWE 2018-2019 Live Events across the country.  See Declaration of Lauren Dienes-Middlen, Esq., (See "Ex. 1" hereto) at ¶¶ 3, 33.

Defendants are bootleggers currently engaged in the manufacture, distribution and sale of

unauthorized merchandise including, but not limited to, T-shirts marked with imitations or counterfeits of the WWE Marks ("Counterfeit Merchandise").  See Verified Complaint at ¶¶ 1-3, 5.   These bootleggers will attempt to sell the Counterfeit Merchandise at or near the Wrestlemania® 34 Weekend Events and WWE's other 2018-2019 Live Events.  See generally Ex. 1.  WWE knows this because it has encountered sellers of Counterfeit Merchandise at prior WWE events, including particularly at prior Wrestlemania® events, and has successfully obtained ex parte TROs from federal courts in New York, Massachusetts, Florida, Texas, Georgia, New Jersey, and California to stop such illegal activity.  See Exhibit 2 attached hereto; Ex. 1 at ¶¶ 8-31.  In fact, the last time Wrestlemania® was held in New Orleans, the Court of Appeals for the Fifth Circuit specifically endorsed the relief WWE requests here when the Circuit vacated a prior ruling from this Court denying WWE's request for ex parte TRO and Seizure Order based on substantially the same facts averred in the Verified Complaint and substantially similar witness declarations filed concurrently herewith.

Considering substantially similar facts as asserted in this case, the Fifth Circuit found as follows:

> WWE presented evidence establishing that it owns many valuable trademarks and earns significant revenues from the sale of merchandise bearing those marks at live WWE events across the country. The evidence further established that WWE can readily identify the unauthorized designs of counterfeit merchandise and that WWE makes its own merchandise sales directly—it does not license third parties to sell merchandise at live events. WWE alleges that Defendants work as "fly-by-night" counterfeiters, setting up shop near WWE events and cannibalizing WWE's merchandise sales by purveying unauthorized products. . . . WWE faces a real threat from such counterfeiters who, upon detection and notice of suit, disappear without a trace and hide or destroy evidence, only to reappear later at the next WWE event down the road.

World Wrestling Ent., Inc., 770 F.3d at 1144. Vacating the district court's denial of relief based on its conclusion that WWE had not proved "specific facts" about the identities of "person[s] against whom seizure would be ordered," the Fifth Circuit held that "the district court's granular

5

focus on the 'identity' of unnamed Defendants misinterpreted the statutory requirement and its application here." Id. at 1145. Instead, the Fifth Circuit found that "WWE cannot know in advance the specific identities of counterfeiters who will present themselves at any given event, but it does know that any non-affiliated seller at or near an event is almost certainly a counterfeiter. In this case, therefore, the 'person[s] against whom seizure would be ordered' are readily identifiable as any non-affiliated person purporting to sell WWE merchandise at or near a live WWE event." Id. Accordingly, the Fifth Circuit held based on the record presented by WWE — the substantially same record WWE presents in this case — "that WWE has met its burden under section 1116(d), and that the orders sought here [a TRO and seizure order] should issue. Id. The Fifth Circuit's ruling was consistent with the prior TROs and Seizure Orders WWE obtained from multiple federal district courts, pursuant to which WWE has been able to seize Counterfeit Merchandise sold by unauthorized bootleggers at prior Wrestlemania® events and other WWE live events. See Ex. 1 at ¶¶ 8-31; Ex. 2.

WWE has never authorized the manufacture, distribution, or sale of the Counterfeit Merchandise sold by Defendants. See Verified Complaint at ¶ 32. Unlike genuine WWE goods, which are of the highest quality and grade, the Counterfeit Merchandise is likely to be of inferior quality to the WWE Merchandise. Ex. 1 at ¶¶ 48-50. Further, because the quality of materials used by the Counterfeiters is not and cannot be controlled by WWE, there is a potential safety risk to the public with regard to the materials used to manufacture the Counterfeit Merchandise (e.g., the Counterfeit Merchandise does not meet flammability standards). Id. In this regard, at the Preliminary Injunction hearing before the District Court for the Southern District of Florida in 2012, the Court when presented with the Counterfeit Merchandise that was seized noted the very strong chemical odor emanating from shirts, remarking that the Court did not "even have to

have it close to my nose" to notice the smell. See id. at ¶ 48. Thus, Defendants' sales of inferior quality Counterfeit Merchandise displaying the WWE Marks will injure WWE's reputation for the manufacture and sale of the highest quality souvenirs, merchandise, and memorabilia and could pose a risk to public safety.  See id. at ¶¶ 48-50.

Based on its prior encounters with sellers of Counterfeit Merchandise at WWE live events, WWE has reasonable concern that any notice to Defendants would result in the movement of or dispersal of the goods bearing counterfeit marks to third parties for eventual sale elsewhere. See generally Ex. 1.  In this regard, WWE asks this Court for relief in the form of an ex parte TRO against Defendants, an Order of Seizure of Defendants' goods bearing counterfeits of the WWE Marks, and an Order to Show Cause why a preliminary injunction should not issue. As recognized by Prof. McCarthy, the relief requested herein is the only method for WWE to protect its rights and the public from the sale of inferior merchandise which bears a false designation of origin and which is sold by Defendants who are accountable to no one, whether for payment of royalties, sales taxes, or for quality control.

## ARGUMENT

This Court may issue a temporary restraining order to preserve the status quo pending a preliminary injunction hearing if WWE establishes that it is likely to suffer irreparable harm in the absence of such an order.  See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20-22 (2008); Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 829 (5th Cir. 1976); Am.'s Favorite Chicken Co. v. Kim, No. 9-3452, 1993 WL 441854 at *1-2 (E.D. La. Oct. 25, 1993).  Under prevailing Fifth Circuit law, the standards for issuance of a temporary restraining order are the same as those governing the granting of preliminary injunctive relief.  See Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 309 (5th Cir. 2008).

301640866 v2

In order to obtain a temporary restraining order or preliminary injunction in a trademark infringement action, a plaintiff must show (1) that it has a substantial likelihood of prevailing on the merits of its trademark infringement claim, (2) that there exists a substantial threat that it will suffer irreparable injury if the injunction is denied, (3) that the harm it is likely to suffer outweighs any harm to defendants if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.  Paulsson, 529 F.3d at 309; Sierra Club v. City of San Antonio, 112 F.3d 789, 793 (5th Cir. 1997).  For the reasons described in detail below, WWE is entitled to relief under each of these four factors.

**A.** **WWE IS ENTITLED TO A TRO AND SEIZURE ORDER AGAINST SALES OF GOODS BEARING COUNTERFEIT MARKS.**

    **1.** **There Is A Substantial Likelihood That WWE Will Prevail On The Merits Of Its Claims.**

In a trademark infringement action brought under the Lanham Act, the plaintiff must show that (1) its mark is valid, and (2) the defendant's use of the mark is likely to cause consumer confusion.  See Paulsson, 529 F.3d at 309.[1]  WWE is likely to succeed on the merits of its claims against Defendants for the following three reasons.

*First*, the WWE Marks are valid.  WWE owns federal trademark and service mark applications and registrations for the numerous marks listed in Exhibit 1 to the Verified Complaint.  The federal trademark registrations are prima facie evidence of the validity of WWE's marks.  15 U.S.C. § 1115(a).  With respect to the unregistered names and trademarks of its current wrestlers, including their likenesses and rights of publicity, WWE exclusively owns or controls all right, title and interest in those trademarks and other intellectual property right through its contracts with those wrestlers.  See Verified Complaint at ¶ 10.

---

[1]  The Lanham Act protects both registered (§ 32) and unregistered marks (§ 43).  See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003).

301640866 v2

**Second**, Defendants' use of counterfeit marks is likely to cause consumer confusion.  The likelihood of confusion test focuses on whether a defendant's use of a plaintiff's trademark is likely to create confusion in the minds of potential purchasers as to the source, affiliation, or sponsorship of the parties' products.  See Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 193 (5th Cir. 1998) (citing Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs, Inc., 41 F.3d 223, 227 (5th Cir. 1995); see also MCCARTHY ON TRADEMARKS § 27:18.[2]  Applying analogous likelihood of confusion tests, courts across the country in granting WWE ex parte TROs and Seizure Orders have consistently found that the sale at or in connection with WWE live events of bootleg merchandise using marks that are identical to the WWE Marks create a likelihood of confusion.  See Ex. 1 at ¶¶ 8-31; Ex. 2.

Here, as in WWE's prior cases, Defendants have manufactured bootleg merchandise for the purpose of selling it at WWE live events and are intentionally (1) using marks that are **identical** to the WWE Marks; (2) using them on the same types of merchandise that genuine WWE Marks are affixed to, such as T-shirts; and (3) targeting the fans of the WWE by selling the Counterfeit Merchandise at or near WWE's 2018-2019 Live Events.  See Verified Complaint at ¶¶ 18-53.  The sale of unauthorized bootlegged merchandise bearing the names, trademarks, logos, or likenesses of well-known events, performers or groups unquestionably violates the Lanham Act.  See World Wrestling Ent., Inc., 770 F.3d at 1144-45 (finding any non-affiliated person purporting to sell WWE merchandise at or near a live WWE event is a counterfeiter);

---

[2] The Fifth Circuit employs a non-exhaustive list of factors for determining likelihood of confusion, known as the "digits of confusion."  See Elvis Presley, 141 F.3d at 194.  Because Defendants are expected to use identical marks on the exact same products, WWE has not discussed these factors in detail.  In any event, however, the Verified Complaint and declarations submitted in support thereof establish that the WWE Marks are distinctive, and that Defendants intend to and, unless abated, will deliberately confuse the consuming public into believing they are purchasing legitimate WWE Merchandise of the highest quality.  Accordingly, likelihood of confusion is manifest.

SKS Merch., LLC v. Barry, 233 F. Supp. 2d 841, 845-47 (E.D. Ky. 2002) (holding that selling T-shirts and other merchandise using a performer's likeness, image, photograph, logos and/or tour information without authorization constitutes infringement); see also Paulsson, 529 F.3d at 310 (affirming district court's conclusion that it "need not engage in an analysis of each of the 'digits of confusion' . . . where, as here Defendants employed [plaintiff's] exact marks"); Microsoft Corp. v. Software Wholesale Club, Inc., 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000) ("in the case of a counterfeit mark, likelihood of confusion is clear.").

*Finally*, Defendants' uses of the WWE Marks on goods sold in connection with the Wrestlemania® 34 Weekend Events and WWE 2018-2019 Live Events provide clear evidence that Defendants seek to trade on WWE's well-known marks and confuse the public into believing that Defendants' Counterfeit Merchandise is genuine WWE merchandise.    As explained by the District Court for the Eastern District of Pennsylvania in Brockum Co. v. Blaylock, 729 F. Supp. 438, 444 (E.D. Pa. 1990):

> Defendant [bootlegger] cannot obtain a "free ride" at the [exclusive licensee's] expense.  Its shirts are designed to take advantage of the efforts and expenditures of the plaintiff and benefit from the good will associated with the Rolling Stones, their 1989 tour, and the promotion of the even created or undertaken by the plaintiff and the Rolling Stones.  Such unlicensed use of the Rolling Stones' name would permit the defendant to reap where it had not sown.

### 2.    WWE Will Suffer Irreparable Injury.

It is well settled that an organization's loss of control over its reputation or goodwill constitutes an "irreparable injury."  Paulsson, 529 F.3d at 313 (affirming district court's finding of irreparable injury where plaintiff "had lost control of the quality of the technology that was being associated with its mark" and the damage to plaintiff's goodwill could not be quantified); Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C., 83 F. Supp. 2d 810, 831 (S.D. Tex.

1999) (holding that plaintiff in a trademark infringement action established irreparable injury where plaintiff lacked control over how its mark was being used by defendant).  In this case, WWE certainly will lose control over its reputation and goodwill if Defendants are not prohibited from selling goods bearing counterfeit WWE Marks.  WWE has no connection or access to Defendants' goods, and thus cannot monitor the quality, appearance, safety, or other aspects of the goods which tend to impact WWE's reputation.  The fact that Defendants' Counterfeit Merchandise is expected to be inferior in quality to genuine WWE merchandise contributes to the irreparable injury in this case.  See Osgood Heating & Air Conditioning, Inc. v. Osgood, No. A. 04-CA-1037, 2004 WL 3436800, at *4 (W.D. Tex. Dec. 21, 2004) (finding irreparable injury where plaintiff had no way to determine the harm to the goodwill in its mark as a result of defendant "providing low quality work under the auspices" of plaintiff's mark); Camel Hair & Cashmere Inst. of Am. v. Associated Dry Goods Corp., 799 F.2d 6, 15 (1st Cir. 1986) ("if an infringer's product is of poor quality, or simply not worth the price, a lasting but not readily measurable injury may be inflicted on the plaintiff's reputation . . . ." (quoting Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971)).[3]

---

[3] Although the Fifth Circuit has not formally adopted a "presumption of irreparable injury" upon a showing of likelihood of confusion, see Paulsson, 529 F.3d at 312, district courts within the circuit have held that a showing of likelihood of confusion as to source or sponsorship ordinarily will establish that a risk of irreparable harm exists.   See, e.g., T-Mobile US, Inc. v. AIO Wireless LLC, 991 F. Supp. 2d 888, 927-29 (S.D. Tex. 2014); Clearline Techs. Ltd. v. Cooper B–Line, Inc., 948 F.Supp.2d 691, 715 (S.D. Tex.2013) (stating that "the Fifth Circuit indicated that presuming irreparable injury [in] Lanham Act cases remains appropriate." (citing Abraham v. Alpha Chi Omega, 708 F.3d 614, 627 (5th Cir. 2013)).  Regardless, no presumption is necessary to decide this case because, as explained above, WWE can make a sufficient independent showing of irreparable harm from loss of control of its marks and damage to its reputation.  See World Wrestling Ent., Inc., 770 F.3d at 1144-45; see also Paulsson, 529 F.3d at 313 (without using presumption, finding applicant made sufficient showing of irreparable injury from loss of control).

3.    **The Threatened Injury To WWE Outweighs Any Potential Harm To Defendants.**

As succinctly stated by the District Court for the Eastern District of Kentucky, "bootleg vendors have no conceivable right to continue violating the [Lanham Act]." SKS Merch., 233 F. Supp. 2d at 848.  There is no legitimate argument that Defendants would be harmed by an order that prevents them from violating the Lanham Act.  Defendants seek to reap what they have not sown, namely the fruits of the goodwill and fame associated with the WWE Marks; Defendants are not entitle to a "free ride" at WWE's expense.  Any conceivable harm to Defendants would be purely economic, and under the proposed order, WWE will post security for payment of any costs or damages that may be incurred or suffered by a party found to be wrongfully restrained. As such, the irreparable harm to WWE discussed above is sufficient to outweigh any harm that Defendants could incur.

4.    **Injunctive Relief Will Serve The Public Interest.**

Defendants are infringing the WWE Marks, and an Order restraining Defendants from such activity will clearly serve the public interest for at least the following three reasons.

***First***, "[t]he public interest is **always served** by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." Quantum Fitness, 83 F. Supp. 2d at 832  (emphasis added).

***Second***, the sale of licensed merchandise is expected to generate a substantial amount of revenue for not only WWE, but also the local venues, which will receive a percentage of WWE's legitimate sales, and the federal, state, and local governments who collect taxes upon the total amount of sales of legitimate merchandise.  For example, a study conducted by the Enigma Research Corporation estimated that Wrestlemania® 33 generated $181.5 million in economic impact for the Orlando area and approximately $22.7 million in local, state and county taxes.

See Exhibit 4 attached hereto.  Without a TRO and Seizure Order, counterfeiters will be allowed to steal revenue not only from WWE, but also from local merchants and the governments of the United States and Louisiana.

Finally, the public interest is served by preventing goods that may be of inferior quality and could potentially pose a serious safety risk from being made available to the general public, and especially to children to whom most of the counterfeit T-shirts are targeted (e.g., the Counterfeit Merchandise does not meet flammability standards).

5.     WWE is Entitled to Ex Parte Relief in these Circumstances.

Federal courts have authority to grant a TRO without notice to the adverse party if irreparable injury will result to the plaintiff before the adverse party can be heard.  See Fed. R. Civ. P. 65(b).  Likewise, 15 U.S.C. § 1116(d) expressly provides that that an ex parte TRO and Seizure Order should issue upon a showing of irreparable injury.   Because notice to Defendants would likely result in Defendants disposing or moving the Counterfeit Merchandise, an ex parte TRO and seizure order are appropriate here.  See 15 U.S.C. § 1116(d); In re Vuitton et Fils S.A., 606 F.2d 1, 5 (2d Cir. 1979) (issuing an ex parte temporary restraining order after finding that if notice were given to the alleged infringer, it was highly probable that the infringer would dispose of the infringing goods in the few hours before the hearing).[4]  Moreover, WWE has, on many occasions, attempted to identify the Defendants in this action but has been thwarted by Defendants through numerous evasive tactics, including, but not limited to, failing to carry identification, fleeing when approached by WWE officials, and giving false information.  See

---

[4]   WWE also has complied with the numerous requirements under the statute, including: (1) providing notice to the U.S. Attorney's office in advance of the application for seizure order (see Exhibit 5 (without exhibits); (2) filing a declaration and a Verified Complaint establishing facts sufficient to support the findings of fact and conclusions of law; and (3) agreeing to post security adequate to compensate any person from whom goods are wrongfully seized.

13

Ex. 1 at ¶¶ 11, 54.  Accordingly, following precedent from the Court of Appeals for the Fifth

Circuit and consistent with numerous federal courts across the United States, this court should

grant WWE an ex parte TRO and Seizure Order.  See World Wrestling Ent., Inc., 770 F.3d at

1145 ("[T]he orders sought here should issue."); see also SKS Merch., 233 F. Supp. 2d at 845-

47; Exhibits 2-3 attached hereto.[5]

**B.      A NATIONWIDE INJUNCTION IS APPROPRIATE WHERE DEFENDANTS ENGAGED IN THE COUNTERFEITING ACTIVITY OVER THE COURSE OF A NATIONWIDE SERIES OF LIVE EVENTS.**

Nationwide relief is specifically authorized by 15 U.S.C. § 1116, which provides in

pertinent part for enforcement and service of an injunction "anywhere in the United States where

[Defendants] may be found."  15 U.S.C. § 1116(a).  Such nationwide relief has been particularly

applied in the live sports and entertainment context, especially where companies like WWE

promote a series of live events throughout the country, because counterfeiters, like Defendants

here, follow these events selling Counterfeit Merchandise at every city and venue where a Live

Event takes place.  See generally Exhibits, 1-3.

---

[5]  Because of the ex parte nature of WWE's requested relief, WWE points the Court to three non-binding district court decisions in which ex parte relief against unnamed bootleggers was denied. See Plant v. Does, 19 F. Supp. 2d 1316, 1319 (S.D. Fla. 1998) (holding that the court did not have jurisdiction over unnamed defendants where plaintiff did not provide any reason for why it could not obtain the identities of the unnamed defendants); Araca Merchandise L.P. v. Does, 182 F.Supp.3d 1290, 1295 (S.D. Fla. 2016) (holding that the case was not ripe for judicial disposition and that it did not have jurisdiction over the unknown defendants); Rock Tours, Ltd. v. Does, 507 F. Supp. 63, 66 (N.D. Ala. 1981) (citing at least *sixteen* other federal district court cases that granted ex parte relief against unnamed bootlegging defendants but holding that the court did not have personal jurisdiction over unnamed defendants).  It is notable that in denying ex parte relief in those cases, the courts failed to refer to the ex parte relief provided for by 15 U.S.C. § 1116(d). Moreover, the rationale of the courts to deny ex parte relief is not applicable here for the reasons clearly articulated by the Court of Appeals for the Fifth Circuit in WWE and in SKS Merch.  See SKS Merch., 233 F. Supp. 2d at 848-51 (rejecting the court's analysis in Plant and granting ex parte TRO and seizure order). Furthermore, the plaintiff in Araca obtained a TRO and nationwide preliminary injunction from a court within this Circuit less than a month later. See Araca v. John Does 1-100, Case No. 4:16-cv-01194 (S.D. Tex. 2016).

Recognizing this modus operandi, courts across the country, including courts in this circuit, have granted nationwide injunctive relief and seizure orders.  See, e.g., World Wrestling Ent., Inc. v. John Does 1-100 Case No. 16-790 (N.D. Tex. 2016); Exhibits 2-3; SKS Merch., 233 F. Supp. 2d at 849-53; Gore v. Various John Does, No. 98-CIV-7576 (DLC), 1998 WL 778374, at *1-2 (S.D.N.Y. Nov. 6, 1998).  Those courts have acknowledged that such relief is the only effective way to stop counterfeiting activity that is undertaken by counterfeiters and bootleggers who conspire to travel along tour routes and criss-cross the United States.  See SKS Merch., 233 F. Supp. 2d at 849-53.  Under the reasoning of the court in SKS Merch., WWE is entitled to nationwide relief here for the following reasons.

*First*, based on WWE's prior experiences, these unnamed Defendants and their Counterfeit Merchandise will appear not only at the Wrestlemania® 34 Weekend Events in New Orleans, Louisiana from April 5 through April 10, 2018, but also at WWE's other 2018-2019 Live Events set forth in Exhibit 3 to the Verified Complaint.  Indeed, WWE has encountered first hand this caravan of illegal activity, even having served the same defendants years apart in different cities.  See Ex. 1 at ¶ 36.  In the case WWE filed in the Southern District of Florida for Wrestlemania® 28, two of the named Defendants, Thomas Keane (New York resident) and "Butch" Thomas Ingram, also were served at Wrestlemania® 24 in Orlando, Florida in April 2008, pursuant to an ex parte TRO and seizure order from the District Court for the Middle District of Florida. Id. Neither individual appeared in court in Orlando or Miami. Id. Furthermore, two Defendants in the 2014 case before this court had been previously served in a different state entirely — at WrestleMania® 28 in Miami, Florida in 2012 pursuant to an ex parte TRO and seizure order from the District Court for the Southern District of Florida. Id.  Neither individual appeared in court in Miami or New Orleans.  Id. Additionally, Defendants are even

15

expected to print Counterfeit Merchandise with multiple dates from the 2018-2019 Live Events schedule so that the Counterfeit Merchandise can be sold from city-to-city. See generally Ex. 1. WWE should not be required to suffer irreparable harm in every city before obtaining relief from what is clearly concerted infringing activity by the unnamed Defendants.

*Second*, as the court in SKS Merch. specifically held, 15 U.S.C. § 1116 explicitly provides federal courts the power to grant nationwide injunctions against violation of the Lanham Act. See SKS Merch., 233 F. Supp. 2d at 849-50. The court's analysis in SKS Merch. is not only correct but also logical, as injunctive relief that did not apply nationwide would be of little use if a defendant even though enjoined by one court could sell counterfeit goods in another district without consequence.

*Third*, just as in SKS Merch., any injunctive relief granted in this action would apply only to those Defendants who are served and those acting in concert with those served Defendants. The Supreme Court of the United States has recognized that Rule 65(d) of the Federal Rules of Civil Procedure was intended to embody "the common-law doctrine that a decree of injunction not only bind the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945). Courts have realized that "the objectives of an injunction may be thwarted by the conduct of parties not specifically named in its text." Rockwell Graphic Sys., Inc. v. DEV Indus., 91 F.3d 914, 920 (7th Cir. 1996). Rule 65(d) is meant to protect injunctions from being so undermined. See id. The Court thus may enjoin all participants in a counterfeiting operation in which any Defendants are members. See SKS Merch., 233 F. Supp. 2d at 848-53 (enjoining named and unnamed defendants from selling counterfeit merchandise and ordering that the "Preliminary Injunction may be enforced by the seizure of any such

16

merchandise").

The counterfeiting activities of Defendants are part of a concerted operation that will follow WWE's 2018-2019 Live Events and sell similar merchandise throughout the country.  See generally Ex. 1.  The Counterfeit Merchandise is mass produced and will be sold nationwide at each 2018-2019 Live Event.  Id.  Indeed, because WWE's 2018-2019 Live Events are planned out in advance and advertised on WWE's website, many of the Defendants print the dates of WWE's 2018-2019 Live Events on the back of the counterfeit T-shirts which they sell.  Id. at ¶35.  Persons found selling a shirt that has various dates for WWE's 2018-2019 Live Events can fairly be said to be "aiding and abetting, or acting in active concert with" served Defendants who have sold similar shirts at other 2018-2019 Live Events.

If a nationwide injunction and seizure order is not granted, WWE's attempt to enforce its rights will be fruitless as necessary evidence will be destroyed, removed or concealed. Moreover, requiring WWE to go from court to court throughout WWE's 2018-2019 Live Events would impose a great burden on both WWE and the judicial resources of the courts.

On the other hand, there will be adequate protections in place to ensure that no lawful vendor is harmed by the relief sought and all counterfeiters will have an ability to be heard.  For example, all persons served with the order will be provided with a receipt for the merchandise and will be informed of their right to a prompt hearing before the Court.  Although no bootlegger has ever appeared in any case where WWE has been granted a nationwide injunction and seizure order, WWE would waive any objections to venue and transfer the action should any Defendant challenge any enforcement of the injunction.  Indeed, WWE would welcome such appearances as it would permit WWE to identify the bootleggers, take discovery from them, discover their manufacturing and printing sources and pursue them for money damages.  In addition, WWE's

posted security would be continued so that Defendants would always have the right to be heard and are guaranteed a source of recovery for any wrongdoing that they may assert and WWE will hold any seized articles as directed by the Court.

## CONCLUSION

WWE has established federally protected rights under the Lanham Act.  Defendants' activities unquestionably violate those rights, and WWE is thus entitled to the protection of this Court.  Experience has shown that Defendants are part of an illegal counterfeiting chain and that those Defendants served within this district, as well as their cohorts, will remain a major link in that chain as they follow WWE's 2018-2019 Live Events across the United States.  Accordingly, WWE respectfully requests that the Court grant the relief requested herein.

## BOND

For the reasons stated herein, WWE requests that the bond amount not exceed $10,000.

18

Respectfully Submitted,

WORLD WRESTLING ENTERTAINMENT, INC.

By their attorneys,

/s/ J. Matthew Miller III

Raymond G. Areaux T.A. (#16972)
J. Matthew Miller III (#32594)
Ian C. Barras (#30854)
Carver, Darden, Koretzky, Tessier,
Finn, Blossman & Areaux, LLC
Energy Centre, Suite 3100
1100 Poydras Street
New Orleans, LA 70163
Telephone: 504.585.3803
E-mail: areaux@carverdarden.com


Jerry S. McDevitt (*pro hac vice* motion to be filed)
E-mail: jerry.mcdevitt@klgates.com
Curtis B. Krasik (*pro hac vice* motion to be filed)
E-mail: curtis.krasik@klgates.com
Christopher M. Verdini (*pro hac vice* motion to be filed)
E-mail: christopher.verdini@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501

*Attorneys for Plaintiff, World Wrestling Entertainment, Inc.*

Dated: March 26, 2018

4850-4109-7055, v. 2

301640866 v2